OPINION
{¶ 1} Defendant-appellant, Chan H. Ouch, pro se, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion to withdraw his guilty plea. Because the trial court abused its discretion in failing to hold a hearing on the motion, we reverse.
 {¶ 2} By indictment filed March 29, 2002, defendant was charged with two counts of felonious assault in violation of R.C. 2903.11; each count carried two firearm specifications. On October 24, 2002, defendant entered a guilty plea to both charges, without the firearm specifications, and stipulated that he acted as a complicitor in the offenses. The trial court accepted defendant's guilty plea and sentenced defendant accordingly; the court issued a judgment entry of conviction on November 8, 2002.
 {¶ 3} On August 15, 2005, pursuant to Crim. R. 32.1, defendant filed a pro se motion to withdraw his guilty plea, contending, as pertinent to this appeal, that (1) the trial court failed to comply with R.C. 2943.031, and (2) trial counsel was ineffective in failing to advise him of the consequences of his guilty plea on his immigration status. Defendant requested an evidentiary hearing.
 {¶ 4} Without holding an evidentiary hearing, the trial court issued a decision and entry on May 1, 2006, denying defendant's motion to withdraw his guilty plea. Defendant appeals, assigning two errors:
 ASSIGNMENT OF ERROR No. I:
 THE TRIAL COURT COMMITTED ERROR THAT WAS PREJUDICIAL WHEN IT DENIED THE APPELLANT'S MOTION TO WITHDRAW GUILTY PLEA, WHEN OHIO REVISED CODE § 2943.031(D) MANDATES THE JUDGEMENT [sic] OF CONVICTION BE SET ASIDE AND APPELLANT BE PERMITTED TO WITHDRAW HIS PLEA IN THE ABSENCE OF THE ADVISEMENT OF OHIO REVISED CODE § 2943.031(A).
 ASSIGNMENT OF ERROR No. II:
 DID THE TRIAL COURT ABUSED [sic] ITS DISCRETION WHEN IT DENIED THE APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.
 I. First Assignment of Error
 {¶ 5} Defendant's first assignment of error asserts the trial court erred in denying his motion to withdraw his guilty plea. More particularly, defendant contends the trial court abused its discretion in finding it complied with R.C. 2943.031.
 {¶ 6} R.C. 2943.031(A) provides that prior to accepting a guilty plea from a defendant who is not a citizen of the United States, the court must advise the defendant of the potentially adverse effects a criminal conviction may have on his or her citizenship status. The statute states, in pertinent part, that "prior to accepting a plea of guilty * * * to an indictment * * * charging a felony * * * the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement." The advisement, set out in quotation marks in R.C. 2943.031, states: "If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty * * * may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." R.C. 2943.031(A) further provides that "[u]pon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division."
 {¶ 7} R.C. 2943.031(D) sets forth the consequences of a trial court's failure to comply with R.C. 2943.031(A): "Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty * * * and enter a plea of not guilty * * * if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty * * * may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." R.C. 2943.031(E) further provides that "[i]n the absence of a record that the court provided the advisement described in division (A) of this section and if the advisement is required by that division, the defendant shall be presumed not to have received the advisement."
 {¶ 8} The Ohio Supreme Court considered R.C. 2943.031 in State v.Francis, 104 Ohio St.3d 490, 2004-Ohio-6894, where the defendant pleaded guilty to a fourth-degree felony and informed the trial court she was not a citizen of the United States. Pursuant to R.C. 2943.031(A), the trial court asked defendant if she understood that if she entered a guilty plea to the felony, it "would affect [her] rights in this country[.]" Id. at ¶ 10. The trial court further inquired if she had "gone over that with [her] lawyer[.]" Id. at ¶ 12. The defendant affirmatively answered both questions. More than nine years later, the defendant moved to withdraw her guilty plea pursuant to R.C. 2943.031(D), contending the trial court failed to provide the specific warning set forth in R.C. 2943.031(A). The trial court did not hold a hearing and denied the motion through a journal entry that provided no explanation of its reasoning.
 {¶ 9} The court of appeals affirmed, holding the nine-year gap between the defendant's entering her plea and filing the motion to withdraw rendered the motion untimely as a matter of law. In light of this holding, the court of appeals declined to consider the defendant's contention that because the trial court failed to recite verbatim the language of R.C. 2943.031(A) at her plea hearing, she was entitled, as a matter of law, to withdraw her plea pursuant to R.C. 2943.031(D).
 {¶ 10} The Ohio Supreme Court accepted the case pursuant to discretionary appeal to "consider what standards to apply in ruling on a motion to withdraw a guilty plea based on an alleged failure to comply with [R.C. 2943.031]." Id. at ¶ 1. Many of the standards at issue inFrancis are implicated in defendant's appeal here, so we briefly review the court's discussion of the applicable standards.
 {¶ 11} The court first addressed the standard of review the trial court should use in considering a motion to withdraw a guilty plea filed pursuant to R.C. 2943.031. To that end, the court acknowledged that a motion to withdraw a guilty plea filed after a sentence has been issued is usually subject to the "manifest injustice" standard of Crim. R. 32.1. Id. at ¶ 26. The court, however, concluded the General Assembly intended to replace "manifest injustice" with the standards set forth in R.C. 2943.031(D). Id. The court thus held "that a defendant seeking relief under R.C. 2943.031(D) must make his or her case before the trial court under the terms of that statute, that the trial court must exercise its discretion in determining whether the statutory conditions are met, and that an appellate court reviews a trial court's decision on the motion under an abuse-of-discretion standard in light of R.C. 2943.031 (D)." Id. at ¶ 36.
 {¶ 12} The court next addressed whether the trial court should consider timeliness when ruling on an R.C. 2943.031(D) motion. The court observed that "[t]imeliness of the motion is just one of many factors that the trial court should take into account when exercising its discretion in considering whether to grant the motion." Id. at ¶ 40. The court recognized that untimeliness might sometimes be an important factor in the trial court's decision-making process. The court further acknowledged, however, that even a considerable delay in filing a motion may not be a factor supporting denial of the motion, such as when the immigration-related consequences of the plea and resulting conviction did not become evident for some time after the plea was entered. As such, the court did not establish a "bright-line rule," as timeliness of the motion "will be of different importance in each case, depending on the specific facts." Id. at ¶ 42.
 {¶ 13} The court next determined that "[a] primary factor in a trial court's decision whether an R.C. 2943.031(D) motion should be granted is whether the trial court at the time the defendant entered his or her plea did indeed fail `to provide the defendant the advisement described in division (A)' of R.C. 2943.031." Id. at ¶ 44. The court noted that "R.C. 2943.031(A) is crystal clear in supplying the specific language the trial court is to use in warning a defendant of the possible consequences of pleading guilty or no contest[.]" As the court observed, the statute "even goes so far as to place the required language within quotation marks, leaving no doubt that the General Assembly desires the warning to be given exactly as provided." Id. at ¶ 46. As such, the court held that "[a] trial court accepting a guilty or no-contest plea from a defendant who is not a citizen of the United States must give verbatim the warning set forth in R.C. 2943.031(A), informing the defendant that conviction of the offense for which the plea is entered `may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' " Id. at paragraph one of the syllabus.
 {¶ 14} Recognizing, however, the similarities between the R.C. 2943.031(A) notification and the nonconstitutional notifications of Crim. R. 11(C)(2), the court rejected a strict compliance standard in favor of a substantial compliance standard. Id. at ¶ 45-46. Thus, the court further held that "[I]f some warning of immigration-related consequences was given at the time a noncitizen defendant's plea was accepted, but the warning was not a verbatim recital of the language in R.C. 2943.031(A), a trial court considering the defendant's motion to withdraw the plea under R.C. 2943.031(D) must exercise its discretion in determining whether the trial court that accepted the plea substantially complied with R.C. 2943.031(A)." Id. at paragraph two of the syllabus. The court concluded "substantial compliance" was shown when "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * The test is whether the plea would have otherwise been made." Id. at ¶ 48, quotingState v. Nero (1990), 56 Ohio St.3d 106, 108. (Further citation omitted.)
 {¶ 15} Because the trial court in Francis did not hold a hearing and did not explain its reasoning for denying the motion, the Supreme Court noted it "ha[d] no way of knowing whether the trial court even reached the issue of substantial compliance." Thus it did not determine whether the trial court substantially complied with the R.C. 2943.031(A) advisement in informing the defendant that her guilty plea "would affect [her] rights in this country," or the significance, if any, of the trial court's query as to whether she had "gone over [the advisement] with [her] lawyer." Id. at ¶ 49.
 {¶ 16} The Supreme Court, however, addressed whether a hearing in the trial court is required on a R.C. 2943.031 motion. To that end, the court first noted "there is no specific requirement to hold a hearing." Id. at ¶ 50. The court, however, recognized that it is sometimes difficult for an appellate court to review a trial court's ruling to determine whether an abuse of discretion occurred when no hearing is held. In particular, the court noted the importance of a hearing to determine "whether the defendant has met the statutory factors, including that the defendant has shown that he or she is not a citizen of the United States and that there may be immigration-related consequences from the conviction resulting from the plea." Id. at ¶ 51, citing State v. Garmendia, Montgomery App. No. 2002-CA-18, 2003-Ohio-3769, at ¶ 12. The court further observed that, in some situations, the failure to hold a hearing can constitute an abuse of discretion. Id. The court stressed that "as a general rule, in the absence of specific requirements to the contrary, decisions as to whether to hold a hearing * * * are matters entrusted to the sound discretion of the trial court." Id. at ¶ 56.
 {¶ 17} In Francis, the court ultimately remanded the case for the trial court to hold a hearing to determine whether the R.C. 2943.031
advisement was substantially complied with and whether the timeliness, or untimeliness, of the motion to withdraw warranted denial of the motion. Id. at ¶ 56-57.
 {¶ 18} Within these parameters, we consider defendant's first assignment of error. At the October 24, 2002 plea hearing, the trial court engaged in the following colloquy with defense counsel:
 THE COURT: * * * I WANT TO MAKE THIS CLEAR ON THE RECORD. MR. OUCH, THE DEFENDANT, IS NOT A CITIZEN OF THE UNITED STATES, IS THAT CORRECT?
 [DEFENSE COUNSEL]: THAT IS CORRECT, YOUR HONOR.
 THE COURT: I NEED TO TELL HIM BY PLEADING GUILTY AND BEING FOUND GUILTY THAT THAT MAY JEOPARDIZE HIS STATUS IN THIS COUNTRY, AND I WANT TO MAKE SURE HE UNDERSTANDS THAT.
 [DEFENSE COUNSEL]: YES, YOUR HONOR, THAT IS CORRECT. I HAVE INFORMED HIM ALL OF THOSE RAMIFICATIONS.
 THE COURT: OKAY. * * *
(October 24, 2002 Plea Hearing, at 12.)
 {¶ 19} Almost three years later, defendant filed a motion to withdraw his guilty plea pursuant to Crim. R. 32.1, asserting the trial court failed to comply with R.C. 2943.031(A) because it did not advise him verbatim of the warning required under the statute. Defendant stated that defense counsel only "mentioned that the defendant could be deported, without making him aware of any consequences or ramifications." Defendant, however, maintained that "this error is imputed soley [sic] to the trial Court." (August 15, 2005 Motion to Withdraw Guilty Plea, at 10.) According to defendant, R.C. 2943.031(D) requires that, because the trial court failed to apprise him verbatim of the R.C. 2943.031(A) advisement, the trial court must permit defendant to withdraw his guilty plea and enter a plea of not guilty.
 {¶ 20} Defendant attached to his motion an affidavit asserting that "neither my Attorney, nor the trial Court fully informed or explained the consequences about deportation, and I would not have plead guilty had I known the full consequences prior to my plea of guilty." (Defendant's August 8, 2005 Affidavit, at ¶ 8.) Defendant also attached an unauthenticated copy of a September 21, 2004 "Second Evidentiary Submission" from the Department of Homeland Security, Bureau of Immigration Customs Enforcement to the United States Immigration Court in a case styled "In the Matter of: Chan Ouch Respondent, In Removal Proceedings," which referenced defendant's felonious assault conviction as evidence to be offered in the removal proceedings. According to defendant, the document "is verification that the conviction of the offense to which the Defendant pled guilty, is resulting in his being subjected to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to laws of the United States." (August 15, 2005 Motion to Withdraw Guilty Plea, at ¶ 19.)
 {¶ 21} In response to defendant's motion, the state argued the trial court substantially complied with R.C. 2943.031(A) by inquiring of defendant whether he understood his guilty plea might jeopardize his immigration status. The state acknowledged the trial court did not quote verbatim the R.C. 2943.031(A) advisement, but argued the totality of the circumstances demonstrated the trial court substantially complied with R.C. 2943.031(A) by ensuring defendant understood his plea might adversely affects his immigration status. The state further noted defense counsel informed the court he discussed the issue with defendant and defendant indicated he understood the consequences of his plea. In further support, the state urged the trial court, in the exercise of its discretion, to consider the time lapse between defendant's guilty plea and his motion to withdraw.
 {¶ 22} Defendant filed a reply to the state's response, asserting the trial court neither strictly nor substantially complied with R.C. 2943.031(A). Defendant argued that although the trial court stated what it "needed" to do, it did not do it. (October 3, 2005 "Memorandum Contra in Opposition to Plaintiff's Memorandum Contra Defendant's Motion to Withdraw Guilty Plea," at 4.) Regarding the timeliness issue, defendant offered his unfamiliarity with the law as the cause of his inability to timely prepare the legal documents necessary to initiate the guilty plea withdrawal proceedings. Defendant also maintained the court should conduct a hearing on the motion.
 {¶ 23} In its decision and entry, the trial court observed that it asked defendant at the plea hearing if he understood his guilty plea might jeopardize his immigration status in this country; the court further noted defense counsel informed the court that he discussed the issue with defendant and that defendant understood the consequences of his plea. The trial court acknowledged that it did not quote verbatim the R.C. 2943.031(A) advisement, but determined it substantially complied with the statute by determining that defendant understood his guilty plea might adversely affect his immigration status. The trial court further found defendant's three-year delay in filing his motion weighed against his contention that he did not understand the consequences of his plea.
 {¶ 24} On appeal, defendant argues he did not personally acknowledge to the trial court that he fully understood the consequences of his guilty plea and its effect on his immigration status. Moreover, defendant contends defense counsel's representation to the trial court that he informed defendant of the ramifications of pleading guilty does not satisfy R.C. 2943.031(A). Defendant further asserts the transcript of the plea hearing does not identify exactly what R.C. 2943.031(A) ramifications defense counsel allegedly discussed with him. Defendant lastly contends the trial court abused its discretion in considering the timeliness of his motion to withdraw, failing to hold a hearing, and failing to incorporate the advisement into the judgment entry.
 {¶ 25} Despite the state's and trial court's assertions to the contrary, the record reflects that the trial court did not personally address defendant, provide the advisement to defendant, and inquire of defendant whether he understood the prospect of deportation, exclusion, or denial of naturalization. The state contends, and the trial court found, that defense counsel's representation both that he discussed the issues with defendant and that defendant indicated he understood the consequences of his plea constituted substantial compliance with R.C. 2943.031. Thus, the issue initially resolves to whether a defense counsel's representations that he advised defendant of the consequences of his guilty plea on his immigration status satisfies the requirement of R.C. 2943.031(A) that the trial court personally address defendant, provide the advisement, and ensure that defendant understands the advisement.
 {¶ 26} As noted, the Francis court analogized the R.C. 2943.031(A) notification to the nonconstitutional notifications of Crim. R. 11(C)(2)(a). See, also, State v. Yanez, 150 Ohio App.3d 510,2002-Ohio-7076, at ¶ 32 (holding that the statutory right to receive the immigration-consequences warning is similar to the nonconstitutional warnings enumerated in Crim. R. 11[C][2]). Thus, we appropriately may consider cases determining whether defense counsel's representations that a defendant was apprised of his or her rights under Crim. R. 11 (C)(2) satisfies the nonconstitutional provisions of the rule.
 {¶ 27} In State v. Williams (Nov. 22, 2000), Cuyahoga App. No. 77437, the court stated that "[i]t is clear that the trial court need not inform the defendant of each element of the offense, but rather need only ensure that he understands the charge brought against him. The court's determination that a defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney." Id., citingState v. Rainey (1982), 3 Ohio App.3d 441, 442 (stating that "for a trial court to determine that a defendant is making a plea with an understanding of the nature of the charge to which he is entering a plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge" so that "under some circumstances, the trial court may be justified in concluding that a defendant has drawn an understanding from sources other than the lips of the trial court"). Similarly, in State v. Stewart (Nov. 20, 1986), Cuyahoga App. No. 51350, the court stated that the trial court fully complied with Crim. R. 11(C)(2)(a) because defense counsel informed the trial court that defendant was fully aware of his rights and the potential penalties to which he was subject upon entry of his guilty plea, and counsel opined that the defendant understood his rights and the potential penalties. Those cases thus indicate that, as with the nonconstitutional warnings enumerated in Crim. R. 11(C)(2), a trial court's determination that a defendant has been fully apprised of the advisement set forth in R.C. 2943.031(A) and that defendant understands the consequences of entering a guilty plea on his or her immigration status may be based upon the surrounding circumstances, such as defense counsel's representations to that effect.
 {¶ 28} Such a conclusion, however, does not resolve the matter at issue. In State v. Batista, Franklin App. No. 03AP-1009, 2004-Ohio-5066, the trial court asked the defendant if he understood the possibility that by pleading guilty, he could be deported. Id. at ¶ 8. This court held that substantial compliance with R.C. 2943.031(A) requires a defendant to be informed not only of the possibility of deportation, but also of the possibilities of exclusion from admission into the United States and denial of naturalization pursuant to the laws of the United States. Id. at ¶ 9. We reasoned that "[w]ithout being informed of the additional warnings, appellant could not form a subjective understanding of the implications of his plea." Id. We further determined, however, that the trial court's failure to substantially comply with R.C. 2943.031(A) did not warrant reversal, as the defendant failed to demonstrate he was prejudiced by the trial court's transgression. More particularly, we observed the defendant did not assert the full advisement would have influenced his decision to plead guilty and did not set forth any evidence he was facing exclusion from admission to the United States or denial of naturalization. Id. at ¶ 12.
 {¶ 29} Here, defense counsel represented to the court that he informed defendant of all the "ramifications" of pleading guilty on his immigration status. Defendant admits in his motion that defense counsel informed him of the possibility of deportation, but asserts in his affidavit that defense counsel did not fully inform him or explain the consequences of his guilty plea. He further asserts he would not have plead guilty had he known the "full consequences" prior to entering the plea. Thus, although it appears defense counsel informed defendant of the possibility of deportation, the record is unclear whether defense counsel advised him of the possibilities of exclusion from admission into the United States and denial of naturalization pursuant to the laws of the United States.
 {¶ 30} Further, defense counsel did not opine to the court that defendant understood the advisement provided. Moreover, unlike the defendant in Batista, defendant arguably has demonstrated that the trial court's alleged failure to substantially comply with R.C. 2943.031(A) prejudiced him. As noted, defendant asserted in his affidavit the full advisement would have influenced his decision to plead guilty. Under these circumstances, the trial court abused its discretion in failing to hold a hearing on defendant's motion in order to assess whether defense counsel properly advised defendant. The first assignment of error is sustained to the extent indicated.
II. Second Assignment of Error
 {¶ 31} Defendant's second assignment of error contends trial counsel was ineffective in failing to fully inform him of the consequences of pleading guilty on his immigration status. To demonstrate ineffective assistance of counsel, the defendant must meet a two-part test.Strickland v. Washington (1984), 466 U.S. 668, 687. Initially, the defendant must demonstrate that counsel's performance was deficient. Id. To meet that requirement, the defendant must establish that counsel's errors were so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Id.
 {¶ 32} The defendant then must show that counsel's deficient performance prejudiced the defense. Id. To meet that requirement, the defendant must demonstrate that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In effect, defendant must demonstrate there is a "reasonable probability" that, but for counsel's error, the result of the trial would have been different. Id. at 694. Unless the defendant makes both showings, it cannot be said the conviction resulted from a breakdown in the adversary process that rendered the result unreliable.
 {¶ 33} The trial court determined that defense counsel was not ineffective, as the record of the plea hearing established counsel informed defendant of the possibility of deportation. The state urges that defense counsel had no duty to explain the R.C. 2943.031(A) advisement to defendant, citing State v. Lei, Franklin App. No. 05AP-288, 2006-Ohio-2608, at ¶ 32. In Lei, this court determined that "no statutory or decisional authority requires trial counsel to advise a defendant of the civil, collateral consequence of deportation for purposes of the defendant's decision as to whether to accept a plea agreement or to exercise her constitutional right to trial, or whether to testify at trial." Id. We, however, further noted the trial court specifically found defense counsel properly advised the defendant of the deportation consequences of a conviction after holding a hearing on the defendant's motion for new trial at which the defendant had the opportunity to fully present her version of the substance of her conversations with trial counsel. In contrast, defendant here was not afforded a hearing and thus had no opportunity to present his version of the substance of his conversations with defense counsel.
 {¶ 34} The state also relies upon State v. Creary, Cuyahoga App. No. 82767, 2004-Ohio-858 for the proposition that "deportation remains a collateral consequence of conviction, and criminal defense lawyers ordinarily are not required to inform defendants of collateral consequences." Id. at ¶ 8, citing United States v. Couto (C.A.2, 2002),311 F.3d 179, 187-188. The court, however, further noted that "an evolving sense of the lawyer's duty indicates that such information should be given when it appears critical to the defendant's situation, and the adoption of R.C. 2943.031 is consistent with the evolution of that standard." Id. (Citations omitted.) The court determined that because the defendant alleged facts demonstrating that counsel was fully aware of his interest in deportation consequences, the failure to inform him concerning deportation "can be held to fall below professional standards." Id.
 {¶ 35} To the extent a trial court's determination that its substantial compliance with R.C. 2943.031(A) may be based upon defense counsel's representations, defense counsel stands in the shoes of the trial court and, therefore, must substantially comply with R.C. 2943.031(A). Depending on the facts adduced at the hearing, failure to do so may be deemed to fall below professional standards. Because the trial court must hold a hearing to determine whether defense counsel properly advised defendant of the possible consequences in pleading guilty to a felony offense, and to determine whether defendant subjectively understood those possibilities, any determination as to counsel's effectiveness would be premature. Instead, as the trial court reviews the evidence produced at the hearing on defendant's motion to withdraw, the court also will have the opportunity to consider defendant's claim that counsel was ineffective in advising him of the consequences that accrued with defendant's guilty plea.
 {¶ 36} Having determined defendant's second assignment of error is premature, but having sustained his first assignment of error to the extent indicated, we reverse the judgment of the trial court and remand this matter for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and case remanded.
KLATT, P.J., and TRAVIS, J., concur.